## PARTIES

1. Donald P. MULLER, 769 WORTHINGTON STREET, SPRINGFIELD MASS. 01105 the Plaintiff who stands the victim of police brutality and their attempts to maim and murder him and then falsely arrested, falsely charged and falsely imprisoned from acts perpetrated by each defendant named hereinafter and persons acting in a chain-conspiracy to violations of ESTABLISHED Federal Laws and at all times complained of, defendants violated Plaintiff's Federal Constitutional Rights.

2. Police officer Jose Torres, Police officer O'Brien, Police officer Coach, Detective Police officer McCabe and Police officer Samataro, of the Westfield Police Department., 15 Washington Street, Westfield, Mass. 01085, are Defendants, at all times complained of in this civil action, who performed their professional skills in joint-conspiracy with all other defendants in the conspiracy to violate Plaintiff's federal constitutional rights.

JURISDICTION (Cont.)

# THE CODE OF THE LAWS

OF THE

# UNITED STATES OF AMERICA

TITLE 42 — THE PUBLIC HEALTH AND WELFARE

CHAPTER 21.   CIVIL RIGHTS

PARTICULAR PROCEEDINGS

§ 1983.   Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

(R. S. § 1979; Dec. 29, 1979, P. L. 96-170, § 1, 93 Stat. 1284.)

2.

No. 11 of 35

<u>JURISDICTION</u> (Cont.)

# TITLE 42 — THE PUBLIC HEALTH AND WELFARE

CIVIL RIGHTS

§ 1985.  Conspiracy to interfere with civil rights

(3) Depriving persons of rights or privileges. If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

(R. S. § 1980.)

JURISDICTION(Cont.)

DISTRICT COURTS JURIS.                                28 USCS § 1343

§ 1343. Civil rights and elective franchise

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
  (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42 [42 USCS § 1985];
  (2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;
  (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
  (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

(b) For purposes of this section—
  (1) the District of Columbia shall be considered to be a State; and
  (2) any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
(June 25, 1948, ch 646, § 1, 62 Stat. 932; Sept. 3, 1954, ch 1263, § 42, 68 Stat. 1241; Sept. 9, 1957, P. L. 85-315, Part III, § 121, 71 Stat. 637; Dec. 29, 1979, P. L. 96-170, § 2, 93 Stat. 1284.)

4.

No. 13 of 35

JURISDICTION(Cont.)

PARTICULAR PROCEEDINGS                                    28 USCS § 2201
  2202.  Further relief

§ 2201.  Creation of remedy

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, [26 USCS § 7428] a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of Canadian merchandise, as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

(b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act [21 USCS §§ 355 or 360b].

(June 25, 1948, ch 646, § 1, 62 Stat. 964; May 24, 1949, ch 139, § 111, 63 Stat. 105; Aug. 28, 1954, ch 1033, 68 Stat. 890; July 7, 1958, P. L. 85-508, § 12(p), 72 Stat. 349; Oct. 4, 1976, P. L. 94-455, Title XIII, § 1306(b)(8), 90 Stat. 1719; Nov. 6, 1978, P. L. 95-598, Title II, § 249, 92 Stat. 2672; Sept. 24, 1984, P. L. 98-417, Title I, § 106, 98 Stat. 1597; Sept. 28, 1988, P. L. 100-449, Title IV, § 402(c), 102 Stat. 1884; Nov. 16, 1988, P. L. 100-670, Title I, § 107(b), 102 Stat. 3984.)

§ 2202.  Further relief                                   28 USCS § 2202

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.
(June 25, 1948, ch 646, § 1, 62 Stat. 964.)

COUNT ONE CAUSE OF ACTION

  On NOVEMBER 27,1992 Plaintiff's wife placed a phone call to the 911 EMERGENCY LINE OPERATOR, seeking assistance, because Plaintiff had been drinking.

1.  In response to the 911 CALL, defendants Officer Jose Torres and Officer O'Brien (uniform officers) were the first at the scene.

2.  Plaintiff, in hearing the arrival of the police, approaching the door, this in response to 911 CALL placed by Plaintiff's, wife, Plaintiff being afraid grabs a turkey carving knife from the kitchen, <u>with intent to guard himself.</u>

3.  The front door was locked and dead-bolted; Plaintiff at this time was behind door in question, holding turkey carving knife by handle with sharp blade of knife pointed towards abdomen.

4.  This above action, done by plaintiff with knife, due to plaintiff being afraid of what next might happen, stated repeatedly to the police, yelling clearly through this closed door:'I HAVE A KNIFE IN MY HAND WITH THE SHARP-END UP AGAINST MY CHEST AND THE BUTT-END UP AGAINST THE DOOR,IF YOU BREAK DOWN THE DOOR,YOU'LL STAB ME.'

5.  Police asked the Plaintiff's wife, where she was located, stated that she was in the bedroom doorway. Police also asked her how far away she was, she stated about 6-feet. Police also asked Plaintiff's wife, what was between her and the door. She stated an end-table and a chair.

6.  Plaintiff's wife, also verified when asked, if she could open the door, stating she could not due to Plaintiff being in front of the door with knife between him and the door, with sharp end of knife pointing in to ABDOMEN.

7.  The defendants, having been put on notice, by both the Plaintiff and his wife, as to it being impossible to enter through door without INJURY AND POSSIBLE DEATH TO PLAINTIFF, this NOTICE had been given from the START.

8.  AT NO TIME DID PLAINTIFF POINT THIS KNIFE AT, OR THREATEN ANY HARM UPON HIS WIFE!!!

9.  AND AT NO TIME DID PLAINTIFF THREATEN POLICE WITH ANY HARM, AS IS PUT FORTH IN THE POLICE REPORT marked [EXHIBIT A] dated "11/27/92".

10. Plaintiff claims that this above-mentioned police report, marked [EXHIBIT A], reported by defendant OFFICER JOSE TORRES, contains FALSE FACTS (prevarications) as to alleged statements made by Plaintiff.

11. Alleged FALSE STATEMENTS, never made by Plaintiff was written by defendant(S): "GO AHEAD YOU FUCKERS, OPEN THE DOOR AND I'LL CRACK YOUR FUCKING SKULLS," or words to that affect, AS NO OTHER PERSON HEARD PLAINTIFF STATE THESE WORDS; THEN THE ONLY TIME WAS WHEN THEY WERE WRITTEN OUT OF THE PEN OF OFF. JOSE TORRES ONTO THIS "POLICE REPORT", MARKED [EXHIBIT A.].

2.

# EXHIBIT A

WESTFIELD POLICE DEPARTMENT
15 WASHINGTON STREET
WESTFIELD, MASSACHUSETTS 01085

SUSPECT: Muller, Donald P                     DATE: 11/27/92
33 BROAD ST., APT. 11
Westfield, MA.

CHARGE: Violation 209A Domestic Abuse

On this date, Officer O'Brien and I were dispatched to a disturbance at 33 Broad St, Apt. 11. The report was a female called 911 requesting help, the phone had been taken away and hung up. On arrival I knocked on the door to apartment 11 and identified myself as a Police Officer. I told the people in the apartment I was responding to a reported domestic disturbance. I asked a male voice behind the door, later found to be Mr. Muller, to open the door. I told him I had to make sure everyone in the apartment was alright. Mr Muller started yelling abusive language, threatening to smash my head open with a pipe if I, or anyone, attempted to enter his apartment. I called out to Mrs. Muller to come and open the apartment door. Mrs. Muller called back to me she couldn't open the door because her husband was at the door with a knife and a pipe. Her voice sounded strained like she was afraid. Officer O'Brien and attempted to force the door open, but ther was a deadbolt on the door. While we were trying the door Mr. Muller was yelling " Go ahead you fuckers open the door and I'll crack your fucking skulls" or words to that affect. I radioed the station and requested more help and told them at the station Mr. Muller was now threatening to hurt himself. I was informed by Officer Samataro, the dispatcher, that Muller had called the station and left the phone off the hook and they were able to hear what Muller was saying in the apartment. Detective McCabe and Officer Coach arrived at the scene with a battering ram and Muller's apartment door was forced open. Entering the apartment I noticed a pipe next to a chair by the door. Muller was behind the door. as I entered he fell away from the door into the Kitchen area, at this time he still had a knife in his hand. Officer OBrien Maced Muller, he fell on to his stomach. The fell from his right hand and was near his right hand. I than secured the knife. Because Muller had threatened to injure himself. I rolled him over to check him out. I noticed blood on his shirt and requested an ambulance. While attempting to give Muller First Aid by using direct pressure on his wound he became combative and was maced again by Officer O'Brien. The three of us had to restrain Muller to the Fire Dept E.M.Ts arrived. It was necessary to handcuff Muller because of the fight he was giving the E.M.Ts. While the ambulance personnel wer caring for Mr. Muller I was calming Mrs. Muller who stated that the incident wasn't her fault, that her husband needed help. She was concerned with her husband's

3.

# EXHIBIT A

wound and after learning that it was only a small cut she agreed to come to the station and give a statement. Det. Lt. Camerota came to the scene and photographed the scene. Mr. Muller was transported to NOble Hospital were he was treated and released to police custody. Mr. Muller was charged with assault with a dangerous weapon in violation of M.G.L. 209A.

While Mrs. Muller was giving her statement expressed concern about Mr. Muller getting released because she was afraid of him. She was advised about getting a restraining order, and told that Mr. Muller would be held until Tuesday, the next court session in Westfield, that she should get a restraining order at that time. I also gave her ADA Dan Shay's name and for her to contact him for assistance.

                              Officer Jose Torres

*[Signature] Jose Torres*
*11/27/92*

4.

No. 16 of 35

12. Defendant TORRES and defendant O'BRIEN being fully aware of this knife, held by Plaintiff, pointed AGAINST HIS OWN ABDOMEN, this told to them by both the Plaintiff and Plaintiff's wife, REPEATEDLY, could not have gained entry in a proper and safe manner through the only door and still protected Plaintiff's life. [EXHIBIT U.]

13. Instead, in calling for more back-up to help resolve this matter, (2) other detectives arrived AFTER COMPLETING A "drug bust" on a previous call,(Plaintiff was informed later on), the (2) detectives arrived at 33 Broad Street, Westfield, Mass., at Plaintiff's apartment.

14. Both detective Mc CABE and detective COACH, defendants, arrived at the scene with a BATTERING RAM, knowing that Plaintiff would be stabbed if they break down the door. Plaintiff at this time had a HEXAGON BAR in his left hand, pressed up against the handle of the door, and in his right hand, he was holding the knife with the butt-end against the door, and the sharp end up against his chest. He repeatedly told them of this very situation.    COUNT TWO CAUSE OF ACTION

15. Defendants McCabe and Coach, did commence smashing upon the door with the BATTERING RAM. On their 3rd bang, Plaintiff dropped the HEXAGON BAR to the floor near the chair; the 4th bang forced open the door, forcing the knife into the Plaintiff's ABDOMEN, as he dropped THE KNIFE and began to fall backwards with the motion of the door; he was IMMEDIATELY SPRAYED WITH MACE AS THE OFFICERS RUSHED IN, into his EYES, FACE AND UPPER BODY UNTIL THE CAN WAS EMPTIED. Plaintiff fell backwards, hitting his head on a glass of beer on the kitchen table, then

HE FELL ON HIS BACK TO THE FLOOR, SCREAMING from the stabb wound to his ABDOMEN and the FIRST DEGREES OF FACIAL BURNS from the MACE. At this time Plaintiff heard one officer stated:

"OH SHIT! WE STABBED HIM!"

Defendants witnessing Plaintiff SCREAMING, pulled out another can of MACE and again commenced SPRAYING HIM. [EXHIBITS-V,W,X,Y,Z.]

16. While Plaintiff was struggling to SEE, he witnessed in his blurred vision, an officer place the knife on the LEFT SIDE of him while he was still laying on the floor. Plaintiff was SCREAMING ALOUD FROM THE PAINS OF THE STABBING AND THE PAINS FROM BEING MACED, While Plaintiff was lying on his back on the floor, then defendants police officers took pictures of Plaintiff on the floor. COUNT THREE CAUSE OF ACTION

17. Plaintiff was thereafter dragged by the defendants out of the apartment and into the hallway. Plaintiff recalls seeing one of the defendants, (a bald headed) defendant, APPLIED EXCESSIVE FORCE UPON PLAINTIFF, BY FORCING HIS HAND OVER PLAINTIFF's MOUTH AND NOSE, WHILE FORCING PLAINTIFF"S HEAD HARD TO THE FLOOR: SIMULTANEOUSLY SMOTHERING PLAINTIFF, TRYING TO STOP PLAINTIFF FROM SCREAMING IN AGONY FROM HIS PAINS FROM THE STAB-WOUND AND BEING MACED!!

18. Emergency Medical Team (E.M.T.s) arrived and placed the Plaintiff on a scoop-stretcher, then he was secured to the stretcher and taken to the hospital by the ambulance vehicle.

6.

35.

BEDROOM

ANN (Plaintiff's Wife)

LIVING ROOM

Police Officers,

HEXEGON BAR

PLAINTIFF MULLER

KNIFE

TORRES & O'BRIEN

BATHROOM

**Exhibit U**

KITCHEN AREA

7.

No. 17 of 35

36.

BEDROOM

ANN (PLAINTIFF"S WIFE)

LIVING ROOM

HEXEGON BAR

PLAINTIFF MULLER

KNIFE

Police Officers:

TORRES
O'BRIEN
McCABE
COACH

BATHROOM

Exhibit V

KITCHEN AREA

8.

No.18 of 35

37.

BEDROOM

ANN (PLAINTIFF'S WIFE)

LIVING ROOM

HEXEGON BAR

Police Officers

PLAINTIFF MULLER

KNIFE

TORRES
O'BRIEN
McCABE
COACH

BATHROOM

Exhibit W

KITCHEN AREA

9.

38.

BEDROOM

ANN (PLAINTIFF'S WIFE)

LIVINGROOM

HEXEGON BAR

Police Officers

TORRES
O'BRIEN
McCABE
COACH

SPRAYING MACE

KNIFE

PLAINTIFF MULLER FALLING BACKWARDS

BATHROOM

Exhibit X

KITCHEN AREA

10.

No. 20 of 35

Floor plan diagram labeled "Exhibit Y" showing:
- BEDROOM (top) with couch, ANN (PLAINTIFF'S WIFE)
- LIVING ROOM with POLICE OFFICER, HEXEGON BAR, POLICE OFFICERS (TORRES, O'BRIEN, McCABE, COACH)
- KNIFE, A GLASS ON TABLE
- PLAINTIFF MULLER FALLING BACKWARDS
- BATHROOM
- KITCHEN AREA

39.

11.

No. 21 of 35



## COUNT FOUR CAUSE OF ACTION

19. At NOBLE HOSPITAL, Plaintiff was given cold-packs applied to his face; he was treated with (5) SUTURES to ABDOMEN-KNIFE WOUND with DRESSING APPLIED TO ABDOMEN: SUPERFICIAL LASCERATION NOTED APPROXIMATELY (1-INCH) BACK OF HEAD--BLEEDING CONTROLLED.. Plaintiff was also diagnost with FIRST DEGREE FACIAL BURNS, as a result to being MACED by the defendants POLICE OFFICERS.

20. DefendantS police officers intentionally MADE FALSE STATEMENTS to Nurse JASRULSKI, TELLING HER:

> "REPORTED THAT P T. THREATENED TO KILL HIS WIFE AND ALSO HAD A GUN KNIFE (error) in his MOUTH TO KILL HIMSELF."

PLAINTIFF NEVER threatened to kill himself, nor anyone else, as defendants police officers performed SUBORDINATION TO PERJURY, in the scheme to violate Plaintiff's Federal Constitution Rights by having NURSE JASRULSKI falsify the Clinical Records Documents. [EXHIBIT H.]

21. The acts of the defendants NOBLE HOSPITAL, JAMES D. ANDERSON, M.D. contributed to the FURTHERANCE OF THE ONGOING CONSPIRACY AGAINST PLAINTIFF MULLER, by writing FALSE STATEMENTS OF WHAT PLAINTIFF ALLEGEDLY SAID: ALLEGED FALSE STATEMENTS WERE:

> "STATED TO HAVE BEEN SPRAYED IN THE FACE WITH MACE BY HIS WIFE. STATED THAT HE CUT HIS OWNSELF WITH A KNIFE ON THE ABDOMEN. ALSO DIAGNOSIS...SELF-INFLICTED 4 cm. LACERATION OF THE LEFT ABDOMEN INTO FAT."
> [EXHIBT I.]

Plaintiff VIGOROUSLY DENYS ALL STATEMENTS HEREINABOVE CLAIMING that he was MACE (D) by his WIFE, or that he inflicted upon himself the WOUNDS he suffered being a victim of POLICE BRUTALITY AND ATTEMPT TO MURDER HIM BY SMASHING HIM WITH THE BATTERRING RAM UPON THE DOOR.

13.

# EXHIBIT H


**noble hospital**
People Caring for People
115 West Silver Street
P.O. Box 870
Westfield, Mass. 01086-0870

Donald Muller

CLINICAL RECORD
EMERGENCY DEPARTMENT PATIENT

LTD: 5 yrs ago.

CBC. EtOH. Type/Hold    98⁶ — 100. — 20   148/80    NKA.

| DATE | DISCIPLINE CHARTING | TIME | |
|---|---|---|---|
| 11/27/92 | | 2210 | Meds: none. Stated ? collapsed lung. |

Pt brought in via WPD ∅ being called due to a self inflicted abd wound. Pt has been drinking, states "just give me a shot and let me die." Pt is in police custody.

O: Strong odor EtOH on breath, yelling, shouting & being ill with staff. Superf. lac noted aprox 1" back of head — bleeding controlled. Face red — from "mace" per pt. Also noted aprox 3" lac (L) abd. Bleeding controlled. Resp 24. No resp distress noted.

A: Cat via seen, inj. lot for infect 2° the laceration.
P: To be seen by Dr TRC#2.
IV NS — Dsg applied to abd wound. Exam by Dr Anderson — labs drawn.
Pt is in 4 pt. restraints due to threats to self and staff. Pt is under arrest, police officer xpt.

Pt's face [?] reported that pt threatened to kill...

CONFIDENTIAL
NOT TO BE REPRODUCED WITHOUT WRITTEN CONSENT BY PATIENT OR EMPOWERED REPRESENTATIVE
Form #288-14

14.

EXHIBIT H



**noble hospital**
People Caring for People
115 West Silver Street
P.O. Box 870
Westfield, Mass. 01086-0870

Donald Mullen
3031554 9

CLINICAL RECORD
EMERGENCY DEPARTMENT PATIENT

| DATE | DISCIPLINE CHARTING | TIME | |
|---|---|---|---|
| 11/27/92 | | | T.d. updates. Mouth to kill himself ← ✱ At screening at staff "My fucen face burns" "It's tingling my fucen face is burning". |
| | | 2235 | x-ray done. — Z Jaskulski RN |
| | | 2240 | Dr. Lagae called, will be in to see pt. |
| | | 2250 | Dr. Lagae in to see pt. Sutures to old wounds - area cleansed c betadine - bacitracin oint applied. To follow up c Dr Lagae in 1 week. Z Jaskulski RN. Report given to on-coming shift. Z Jaskulski RN. |
| | | 2330 | E- discharged to go with police. — pt is under arrest — at anytime if pt requests crisis, the team members will be called. follow up with Dr Lagae as planned. |

**CONFIDENTIAL**
NOT TO BE REPRODUCED WITHOUT
WRITTEN CONSENT BY PATIENT OR
EMPOWERED REPRESENTATIVE

15.