UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

DONALD MULLER
     PLAINTIFF ⌉

  V. ⌉

WESTFIELD POLICE DEPARTMENT ⌉

OFFICERS  JOSE TORRES ⌉

EDWARD OBRIEN, MICHAEL COACH ⌉

MICHAEL McCABE, PAUL SAMATARO ⌉

     DEFENDANTS ⌉

CIVIL ACTION NO.

3:04-CV-30185 KPN

FILED
IN CLERK'S OFFICE
2005 MAR 16 P 12:21
U.S. DISTRICT COURT
DISTRICT OF MASS.

PLAINTIFFS MOTION IN OPPOSITION TO DEFENDANTS

MOTION TO DISMISS FOR FAILURE TO COMPLY WITH ORDER OF

THE COURT AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF

CAN BE GRANTED          1.

   Now comes Donald Muller, Plaintiff in the above mentioned action and hereby states on December 31, 2004 I did in fact mail to Honorable Magistrate Judge Kenneth P. Neiman 1550 Main Street, Springfield Mass. 01103, United States District Court and Peter H. Martin, BBO No. 552020 Assistant City Solicitor, 59 Court Street, Westfield Mass. 01085 a copy of my ammended complaint.

   I called the United States District Court on February 10, 2005 to ask about this civil action because I had not heard back from the court concerning this action.

   The Clerk of Courts had informed me on this day that they had not received this ammended complaint and had told me that "sometimes papers get lost in the cracks."

So I then called up assistant city solicitor Peter H. Martin on this day February 10, 2005 and asked him if he had received my ammended complaint and he informed me that he had received my ammended complaint and was wondering why he had not heard anything from the Court, and would verify that I had called him and informed him that the Court stated to plaintiff that they had not received the ammended complaint

I then put together a letter stating this information and hand delivered it along with my ammended complaint to the Clerk of courts at the United States District Court, on February 10, 2005.

## 2.

Plaintiff further states that he was sentenced on November 16, 1993 on another offense in which he served 10 years in prison. On the first day of this sentence he was assaulted by three gaurds while having handcuffs on behind his back at Walpole prison. The next day he was sent to Concord prison where he was subject to being harassed and tormented and had his life threatened by gaurds while he was on a mental health watch. While Plaintiff was at Concord State Prison he had wrote two 15 page letters, one on December 24, 1993 and one on January 3, 1994.

In these letters Plaintiff described being assaulted by gaurds at Walpole, being wrongly prescribed a medication, the Westfield Police Dept. using excessive brutal force on the night of November 27, 1992,

and the misrepresentation on the offense in which I served ten years in prison for.

Later in the year of 1994 Plaintiff had mailed a copy of the January 3, 1994 letter to a friend who in turn mailed this 15 page letter to the following places, U.S. Attorney (Federal) 1003 J.W. McCormick Building P.O. C.H. Boston Ma 02109, Scott Harshbarger, Office of Attorney General, 1 Ashburton Place, Boston Mass. 02108, Supreme Judicial Court, Clerk of the Commonwealth, 1412 New Courthouse, Boston Mass. 02108, New England Governors Conference, 16 Summer Street, Boston Mass. 02110, Civil Liberties Union, 99 Chauncey Street, Boston Mass. 02111, Mass. Bar Association, 20 West Street, Boston Mass. 02111, Volunteer Lawyers Project of Boston Bar Association, 21 Temple Place, Boston Mass. 02111, State House Legislative Branch House of Representatives, 24 Beacon Street, Boston Mass. 02133

This letter was mailed to the above mentioned places on October 13, 1994. Enclosed are pages 2,9,10,11,12 and 15 of the January 3, 1994 letter along with six responses to this letter, marked EXHIBIT A.

In concluding this 15 page letter of January 3, 1994 Plaintiff clearly asked if there was any action that can be taken against the wrongly prescribing of medication the Westfield Police Dept. using excessive brutal force and any appeal of misrepresentation in an offense which Plaintiff was incarcerated for in November of 1993.

Plaintiff claims that any cause of action was Fraudulently concealed from him and cites M.G.L. chapter 260 section 12, marked EXHIBIT B.

Plaintiff further states that he had sent to the Clerk of Courts an EXHIBIT OF FACTS to John C. Stuckenbruck U.S.D.C., for the District of Mass. Western Section, 1550 Main Street, Springfield Mass. 01103.

Which EXHIBIT OF FACTS detailed some of the abuse at the hands of Mass. Correctional officers and other illegal actions perpetrated against the Plaintiff during his ten year prison sentence. Plaintiff received back Green Card Certified Mail receipts to this EXHIBIT OF FACTS that was sent on January 24, 2000 on January 31, 2000 marked EXHIBIT C.

3.

## ARGUMENT

Plaintiff is a person who suffers from mental illness who was in fact traumatized by the Westfield Police officers on the night of November 27, 1992. Plaintiff was then sentenced to ten years on November 16, 1993 where he was traumatized by gaurds throughout his ten year sentence.

Plaintiff was unaware of any cause of action until years later and tryed to secure legal counsel regarding the numerous legal claims that arose to no avail.

Plaintiff only had the legal help of other inmates to assist in making up legal papers to be filed in court, and has been denied any effective legal counsel in any of the serious legal claims, criminal acts and violations of the U.S. constitution for over 12 years.

Mr Peter Martin, defendants counsel is in error when he states "The amended complaint fails to do so." in regards to the mention of the names of the Plaintiff and Defendants.

Case caption states Donald P. Muller, Plaintiff and Westfield Police Dept. officers Jose Torres, Edward OBrien, Michael Cooch, Michael McCabe and Paul Samataro as Defendants

The Defendants names are used in describing criminal acts being perpetrated against the Plaintiff.

4.

Again mr. Peter Martin, defendants counsel is in error when he states "injuries as described in the ammended complaint appear to be personal injuries." in an attempt to evade the constitutional violations perpatrated against plaintiff.

Not only were there personal injuries, there were violations of state law in that the defendants attempted murder on plaintiffs life. There are no statute of limitations on attempted murder.

There was breaking and entering without a warrant, assault and battery twice with chemical mace, assault and battery in the attempt to smother plaintiff as he suffered the pains of being stabbed from the defendants breaking down the door and then using two cans of chemical mace upon plaintiff, filing of false

charges of assault against his former wife, tampering with evidence by placing the knife next to plaintiff on the floor then taking pictures to colaborate their false statements on court papers that plaintiff stabbed himself, and trying to prosecute plaintiff on false charges in a court of law.

All these violations are far more than just personel injuries. These are criminal acts and violations of U.S. constitutional ammendment rights.

## 5.

Again Mr Peter Martin, defendants counsel is in error when he attempts to support the statute of limitations issue. Of course plaintiff knew of his injury but plaintiff did not know he had a cause of action until years later when he filed his civil complaint in 1997. As evidence plaintiff has submitted pages 2, 9, 10, 11, 12 and 15 from a letter dated January 3, 1994 clearly asking if he had a cause of action regarding plaintiffs civil action claims.

Further plaintiff suffered assaults and battery, torments and harassments, threats against his life upon entering the prison system in November 1993 by Massachusetts prison gaurds which plaintiff had submitted

in an EXHIBIT OF FACTS received by the court on January 31, 2000

Plaintiff Donald Muller suffered the on going criminal abuses by Mass. correctional officers and the neglect of these reported abuses by numerous legal services that were specifically designed to protect plaintiff.

Due to the Facts of abuse, torments and harassments being perpetrated against plaintiff throughout his ten year incarceration there was no way plaintiff was going to gain the mental capability to become aware of any causes of action from the illegal actions of the Westfield Police officers, Jose Torres, Edward Obrien, Michael Coach, Michael McCabe and Paul Samataro.

6.

For the following reasons Plaintiff prays for his ammended complaint to be allowed and for a jury trial date to be set to allow defendants to answer to the civil complaint claims.

Donald Muller pro se
769 WORTHINGTON STREET
SPRINGFIELD MASS. 01105

Signed under the penalties of perjury.

Donald Muller pro se

## CERTIFICATE OF SERVICE

I Donald P. Muller, do hereby certify that a true copy of the foregoing document was served upon defendants counsel by U.S. Mail, First class, postage prepaid addressed to Peter H. Martin, BBO No. 552020, Assistant City Solicitor, 59 Court Street, Westfield Mass. 01085 on this 16th day of March 2005.


*Donald P. Muller* pro se
DONALD P. MULLER

Signed under the penalties of perjury on this day March 16th 2005

*Donald P. Muller* pro se

EXHIBIT A

②

have more of a chance. If I pled guilty, because if it went to a jury trial I would have no chance. I had pled guilty in front of Judge John F. Moriarty and he had gave me a 5-10 to serve and two 5-10 suspended. After I was sentenced I had dropped and they dragged me out and put me into a holding cell. I was in one cell and other inmates were in another. The officers had let known to them what I was in there for and they started saying abusive things. I became very sick, they had chained me to the bench and I could not move. I was transported to Walpole State Prison where I did not speak or open my eyes. I was in intake and they wanted me to strip and get finger printed I did not speak or open my eyes or respond in any way. They started to harass me about my crime and called upstairs for two more officer to come down because I was not cooperating. They grabbed me and brought me into a cell, I had handcuffs on behind my back the whole time and one of the officers picked me up by the throat and started to strangle me. This went on for two or three minutes when he set me down on my feet, then one other officer put his leg out and store me onto my back tripping me over his leg. I still did not speak or open my eyes. They grabbed me and stood me up and one of the officers struck me on the left side of my head hard. I opened up my eyes and started screaming loud. One of the officers put his hand over my mouth to try to muffle my scream. They had told me if I had said anything they would bring me back into that cell and do it again. I was terrified and thought that they were going to kill me. That night I stated I wished I was dead and prayed to the good lord Jesus Christ to help me or let me die. The next day I seen two me _ suits and they told me that they were going to get me out of there and send me to concord. When I got to Concord I was terrified and in my

## EXHIBIT A

go but I knew I was going to be drinking so I told her I w going by myself. She was very upset at me for not going ove parents house for thanksgiving. I had about twelve beers dur the six hours I helped my brother move. When my brother dro me off that night Ann was gone to an AA meeting with one of friends. I had set up my electric guitar and keyboard and wal to the package store and bought a quart of beer. I got home opened up the beer and poured me a glass. About 5 minutes l my wife had came home. She was very, very upset with me and to get me to fight with her. She had unplugged my electric gui chord and told me not to play. I said I just got home and I just wanted to play for a little while, to go in the bedroo close the door and I'll be in in a little while. I plugged it in and she pushed me and unplugged it again. We started argue and she went and called 911 saying that she was and that I had been drinking. It was one of the most inho orguments we had in all our years together. I had paniced and her why she called 911. They were still on the line and I them that there was no reason for them to come over, that were just having a minor argument. They had stated that was procedure, that they would have to send someone over. I put down the phone and repeatedly asked Ann "why did call 911 I just wanted to play my guitar." They had arrived five minutes later and as soon as I heard them on the th floor next to our apartment door I ran to the kitchen and took out a turkey carving knife and went back to the I had stated that "I had a knife with the butt end up a the door and the sharp end up against my chest If y

NCCI LAW LIBRARY

(10)

EXHIBIT A

break down the door you'll stab me" repeatedly. After I ha
said that they were talking to Ann asking her where I wo
They asked her where she was. and she said "she was in t
bedroom doorway." They asked her where I was and she sa
"he's standing in front of the door with a knife up against
his chest." They asked her if she could come to the door a
she said that "I was standing in front of the door with
knife up against his chest." I had a hexagone bar I used
for my weights it was about three and a half feet long near
the corner next to the door. I had picked it up and held i
to the door next to the doorknob with my left hand an
had the knife with the butt end up against the door and
sharp end up against my chest with my right hand. They
where I was and where Ann was. There was more police off
on route over to my house. I later learned they had came t
a heroin drug bust and had a battering ram. As soon as t
arrived they started to break down the door. After thre
bangs I had dropped the bar and the next bang broke
the door. I had got stabbed from them breaking down t
door, they had rushed right in and sprayed me with m
before I even hit the ground. I had dropped the knif
near the door and was stabbed and fell backwards al
six feet. I was stabbed from them breaking down th
door and maced before I hit the floor. I had hit
head on the kitchen table before I hit the floor. I
screaming real loud and they maced me again. I was
stabbed and saturated with mace not once but twice.
It was like someone pouring gasoline on you and setti

NCCI LAW LIBRARY

11

<u>EXHIBIT A</u>

you on fire. I was still screaming real loud and they dr
me out in the hallway. I had to spit because of all the m
in my mouth. When I spit I apparently spit on an office
and he said the little fucker spit on me. He had those
rubber gloves on and put his hand over my mouth and no
and using excessive force tryed to suffocate me and u
not let me breath pressing my head into the floor. Whe
they had broke down the door I heard one of them s
"OH SHIT WE STABBED HIM". Its clear to see that they
not show any concern or safety for my life. By their
negligance they caused me physical, mental and emotional.
If that knife was up another four inches they would have
stabbed me in the heart. They could have very easily ki
me with the action they took. I was brought to Noble
pital where I had got five suture's in the abdomen. The
knife penetrated a little over an inch deep and a lit
over an inch wide. They had put cold wet cloth's on my fa
to try and stop the burning but it did not do anything.
an hour or so later they had brought me to westfield jai
and I was in there for three days waiting for court. This
had happened on a friday and I had to wait till monda
morning to go to court. During that time I was very, ver
upset, I could not rest because I was in so much pain!
the stab wound and burning alive from the mace. I kep
on telling them I did not understand, that I was in fron
the door with the butt end up against the door and the st
end up against my chest and what do you do BREAK Dow
THE DOOR it makes no sense. for three days I did not
____ over ↗

NCCI LAW LIBRARY

<u>EXHIBIT A</u>

or rest because I was in so much pain from being ed and burning alive from the mace. My whole face upper body arms and hands were saturated with m I went to court on Monday and they had sent me to water Addiction Center again. I was there for 30 da then brought to Ludlow House of Correction to awit I had a $500.00 bail on me and my brother bailed out. He had rented me an apartment because I had place to go. I had got on Social Security as soon as got out. I had applyed three months earlyer, before had happened. I had a jury trial on May 21, 1993 f assault. In my wifes original testimony that she gave the police there was no mention of any assault or threat toward Though during the trial she lied and said I waived the kni front of her, which I did not do. The police officers testin were contradicting. They tryed to say that they broke down door and then I stabbed myself. They also stated that after broke down the door and was stabbed and maced I was co thats why they sprayed me again with mace. Like my Attor Daniel Bintout said its hardly possible that I could have b combative after I was stabbed and maced. I was in so muc all I could do was scream. They also said that I tryed t off five officers which is highly impossible in the condition in. In my awaiting for this trial I had came to realize th could not and should not drink anymore. My life was fille battles I had lost with alcholism. I started to go to A.A. m everyday. Threw AA. I had learned to become a totally hone person. I started to go to A.A. meetings two sometimes

NCCI LAW LIBRARY

NCCI
LAW
LIBRARY

NCCI LAW LIBRARY

(15)

**EXHIBIT A**

to be worked on and the only way I can deal with anything, is with people on the outside. I had went to the law library once and filed an appeal and sent it to Springfield Superior Court I am incapable of doing anything more with anybody in here. I only leave my cell to eat and take a shower. I am out of my cell about 40 minutes a day, and no matter where I go it is going to be the same way. So I am concerned on what is going to happen to me.

In concluding I would like to know if there is any action I can take against Doctor Reynolds for prescribing me xanax knowing it was highly addictive and that I was an alcholic?

Or any action I can take against the Westfield Police Department for using excessive brutal force and endangering my life and safety causing bodily injury and possible death?

Or any appeal of misrepresentation, or decision of this case and being incarcerated for something which I should not be held totally responsible for?

My counselors were not expecting incarcerction and thought that the sentence was to harsh and I totally agree. Something is just not right with this whole situation. I would appreciate any help in any of these problems.

Thank you very much for your concern in this matter.

sincerely,

*Donald Muller*

DONALD MULLER
M.C.I. CONCORD
W-55426 - SECTION J-4
P.O. BOX OO
WEST CONCORD, MA. 01742    NCCI LAW LIBRARY



**U.S. Department of Justice**

EXHIBIT f

*United States Attorney*
*District of Massachusetts*

---

*1550 Main Street*
*Springfield, Massachusetts 01103*
*(413) 785-0142*

November 7, 1994

Mr. Donald P. Muller
NCCI Gardner - W-55426
P.O. Box 466
Gardner, MA 01440

Re: <u>Letter from Kristine Potier</u>

Dear Mr. Muller:

I am writing in response to your letter, which was forwarded to me by Kristine Potier.

The United States Attorney's Office represents the United States of America in civil and criminal cases. It does not represent individuals in their attempts to overturn their criminal convictions. Nor does this office investigate claims of ineffective assistance of counsel.

Very truly yours,

DONALD K. STERN
United States Attorney

By:

KEVIN O'REGAN
Assistant U.S. Attorney

SUPREME JUDICIAL COURT FOR THE COMMONWEALTH

ROOM 1412     COURT HOUSE

BOSTON, MASSACHUSETTS 02108

(617) 557-1020

<u>EXHIBIT A</u>

SUSAN MELLEN
ASSISTANT CLERK

L. HOLLIEY WHITE
ASSISTANT CLERK PRO TEM

JEAN M. KENNETT
CLERK

October 13, 1994

Mr. Donald Muller
N. C. C. I.  W-55426
P.O. Box 466
Gardner, Massachusetts  01440

Dear Mr. Muller:

I am returning to you the papers which I received in today's mail because I cannot tell why you sent them.  They are all copies of letters to you or copies of your own writings written several months ago, but there is nothing which relates to any case pending in this court.

Very truly yours,

Jean M. Kennett

Clerk

PRISONERS' ASSISTANCE PROJECT
Northeastern University School of Law
400 Huntington Avenue, Boston, Massachusetts 02115
(617) 437-3660

EXHIBIT A

4/1/94
Date

Dear _Mr. Muller_ :

Unfortunately, we will not be able to provide you with any legal assistance at this time for the following reason(s):

(1). ✓    Your legal problem is something we do not handle at all.

(2). ✓    We do not have any students available at the present time.

(3). _____    Your hearing is scheduled too soon to allow us to adequately prepare your defense.

(4). ✓    Because of our limited resources we are un-able to do legal research or provide legal materials to anyone.

(5). _____    We do not provide assistance to inmates housed outside of Massachusetts.

For future reference this office only provides legal as-sistance to state prison inmates at disciplinary hearings, parole rescission hearings, parole revocation hearings and 15 year parole hearings and only when both the hearing and the in-mate are currently in Massachusetts. Should you have any legal problem in the future that falls within these guidelines please feel free to contact us about representing you.

Sincerely,

Wallace Holohan
Executive Director

# MASSACHUSETTS BAR ASSOCIATION

20 WEST STREET, BOSTON, MA 02111-1218
(617) 542-3602 • TDD (617) 556-4095
FAX (617) 426-4344

<u>EXHIBIT (1</u>

October 27, 1994

Donald Muller
W 55 426
NCCI Gardner
Box 466
Gardner, MA 01440

Dear Mr. Muller:

I regret to inform you that the Massachusetts Bar Association Pro Bono Program no longer provides free legal services. The program stopped referring cases to attorneys in March 1990 and is currently involved in attorney recruitment efforts for existing legal service programs.

There are other organizations that may be able to assist you with your legal problems. I suggest that you call the Northeastern University School of Law, Prisoners Assistance Project. They should provide you with information regarding what legal services may be available for you. A copy of your letter has been forwarded to them.

Please call (617) 437-3660. If it's not possible for you to call, the address is:

Northeastern University School Of Law
Prisoners Assistance Project
400 Huntington Ave.
Boston, MA 02115

Good luck in your search for representation.

Sincerely,


Lawyer Referral Service

# VOLUNTEER LAWYERS PROJECT
### of the Boston Bar Association

29 Temple Place
Boston, Massachusetts 02111

Telephone (617) 423-0648
TTY for the hearing impaired (617) 338-6790
FAX (617) 423-0061

## EXHIBIT A

October 17, 1994

Mr. Donald Muller
N.C.C.I. Gardner - W55426
P.O. Box 466
Gardner, MA 01440

Dear Mr. Muller:

I am writing in response to your inquiry for assistance with your case. Please be advised that the Volunteer Lawyers Project does not have the resources to provide attorneys to inmates at this time. I suggest that you contact Massachusetts Correctional Legal Services at 8 Winter Street, Boston, MA 02109. They may be able to help you.

Sincerely,

Mary M. Connolly
Executive Director

A public service project of the Boston Bar Association

# MASSACHUSETTS CIVIL LIBERTIES UNION FOUNDATION
## 99 CHAUNCY STREET, SUITE 310, BOSTON, MASSACHUSETTS 02111

Melissa McWhinney
*Director of Legal Intake*

(617) 482-3170
Fax (617) 451-0009

**EXHIBIT ()**

November 17, 1994

Donald Muller
NCCI-Gardner
Box 446
Gardner, Massachusetts  01440

Dear Mr. Muller:

Thank you for your recent inquiry.  I am sorry to report that the Civil Liberties Union of Massachusetts cannot provide you with legal assistance.  We are a relatively small private organization, supported by membership contributions.  A large number of complaints come in to us regarding violations of civil rights and civil liberties, and we are only able to handle a very few.  The result is that we must sometimes decline to help people who have meritorious claims.

I am sorry that we could not be of more assistance to you in this matter.

Very truly yours,

Melissa McWhinney

MM/lmm

NCCU LAW LIBRARY

EXHIBIT B

§ 12                    LIMITATIONS OF ACTIONS                    C. 260

2. What constitutes fraudulent conceal-
ment

Under Massachusetts law, mere silence
can mount to fraudulent concealment of
cause of action on part of person who,
because of fiduciary position, has duty to
disclose. Jamesbury Corp. v Worcester
Valve Co. (1971, CA1 Mass) 443 F2d 205,
170 USPQ 177.

Fraud referred to in this section must be
actually accomplished by positive acts
done with intention to deceive. Maloney v
Brackett (1931) 275 Mass 479, 176 NE
604; Connelly v Bartlett (1934) 286 Mass
311, 190 NE 799.

§ 12. Extension of Time in Case of Fraudulent Concealment.

If a person liable to a personal action fraudulently conceals the cause
of such action from the knowledge of the person entitled to bring it,
the period prior to the discovery of his cause of action by the person
so entitled shall be excluded in determining the time limited for the
commencement of the action.

History—

RS 120, § 12; GS 155, § 12; PS 197, § 14; RL 202, § 11.

NCCU LAW LIBRARY

## EXHIBIT C

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery   1/31/05

C. Signature
X Wm J Coughlan   ☐ Agent   ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

**ATTORNEY GENERAL THOMAS REILLY OFFICE OF THE ATTORNEY GENERAL ONE ASHBURTON PLACE 20TH FLOOR BOSTON MASS. 02108-1698**

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)
Z 427 043 931

S Form 3811, July 1999    Domestic Return Receipt    102595-99-M

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2 and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery   1/31/00

C. Signature
X Mitchell   ☐ Agent   ☐ Addressee

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

1. Article Addressed to:

**JOHN C. STRUCKENBRUCK OFFICE OF THE CLERK U.S.D.C. FOR THE DISTRICT OF MASS. WESTERN SECTION 1550 MAIN STREET SPRINGFIELD MASS. 01103**

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Copy from service label)
Z 427 043 932

PS Form 3811, July 1999    Domestic Return Receipt    102595-99-M-1789

---

February 1, 2000 received back Green Card Certified Mail Receipts From the certified mail containing 91 Page Petition For A Writ OF Habeas Corpus Ad Subjiciendum and a 166 Page EXHIBIT OF FACTS that was sent on January 24, 2000 which were received on January 31, 2000.

Donald Mullen